IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **NIRIN WALLS,** **#R49110,** | |
| Plaintiff, | Case No. 22-cv-01099-SPM |
| v. | |
| **CHRISTOPHER S. THOMPSON,** **ROBERT E. WEGMAN,** **BRANDON A., WESTBROOK,** **C/O BARTON,** **C/ BAILEY,** **J. BILLINGTON,** **LT. ROBINSON,** **JODI A. PELEGRIN,** **BART D. TOENNIES,** **MICHAEL L. TYUS,** **ASHILI SPARKS,** **DR. SHAH,** **B. BUGGETT,** **C/O JOHN DOES,** *security shack,* **C/O JOHN DOES,** *dining room,* **LT. JOHN DOES,** *dining room,* **MICHELLE DULLE,** **TERRI SCHULTE,** **MICHAEL BEDNARZ,** **BONITA COPELAND,** **J. SEIFFERT,** **COUNSELOR MEYERS, and** **COUNSELOR DELGOTTA,** | |
| Defendants. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Nirin Walls, an inmate of the Illinois Department of Corrections, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while at Centralia Correctional Center. This case is now before the Court for preliminary

review of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Plaintiff alleges that on July 3, 2020, he received a disciplinary report for insolence, unauthorized movement, disobeying a direct order, and intimidation. (Doc. 1-1, p. 66). He states that the disciplinary report was issued out of retaliation because he had previously written a grievance against another correctional officer. (Doc 1, p. 13). The disciplinary hearing was held on July 14, 2020, before Wegman, the Adjustment Committee chairperson, and Westbrook, the Adjustment Committee hearing officer. Plaintiff asserts he was not allowed to call his requested witnesses, and Wegman and Westbrook "lied about a mental health recommendation." (*Id.*). Plaintiff was found guilty of insolence, unauthorized movements, and disobeying a director order, and not guilty of intimidation. (Doc. 1-1, p. 66). He received 2 months demotion to C-grade status as a disciplinary sanction. (*Id.*). Several months later, the Administrative Review Board expunged the disciplinary report from Plaintiff's record, finding that the Adjustment Committee failed to account for Plaintiff's requested witnesses. (Doc. 1-2, p. 46).

Following the hearing, Plaintiff was housed in a disciplinary housing unit, East One. (Doc. 1, p.14). The East One housing unit contains highly aggressive and extremely dangerous inmates. While in East One, Correctional Officer Barton would call Plaintiff a snitch, putting Plaintiff in danger from other inmates. On August 5, 2020, prior to lunch, two inmates named Green and Chew, members of a gang called the "4 Corner Hustlers," approached Plaintiff and asked him if he was working with internal affairs. (*Id.* at p. 17). The inmates began to argue. Correctional Officer Bailey spoke through the intercom and stated, "Break it up outside[,] if you going to chow fight out there." (*Id.* at p. 18). The argument continued through lunch. At one point, it appeared

that Green was going to attack Plaintiff, and correctional officers and lieutenants, including Barton, broke up the fight. (*Id.* at p. 19). The inmates then returned to the line to walk back to East One and staff "walked off." (*Id.*). After entering East One and as Plaintiff was entering his cell, he was held by his shirt and repeatedly punched. (*Id.* at p. 20-21). Plaintiff could see Correctional Officer Bailey watching from inside the control room. Covered in blood, Plaintiff was able to run to the control center, where he had to wait another five to seven minutes before Bailey entered the unit. (*Id.* at p. 22). Plaintiff was then taken to the health care.

At the health care unit, Plaintiff was seen by Nurse Sparks. (Doc. 1, p. 23). Nurse Sparks stated that Plaintiff needed stitches for his lip but that there was no one at the facility who could do the procedure, as Dr. Shah would not arrive until later that evening. Sparks did not attempt to bandage Plaintiff's lip. Plaintiff asked to be taken to an outside facility since his nose would not stop bleeding, and he needed treatment for his lip. Sparks replied, "they don't really care about y'all here you kno[w] that." (*Id.* at p. 24). Sparks prescribed ibuprofen and told the escorting officer that she was finished treating Plaintiff.

Plaintiff was then taken to segregation. (Doc. 1, p. 25). Once in segregation, Nurse Buggett came to his cell with a cup full of powdered medicine. (*Id.* at p. 26). Plaintiff refused to take the medicine since he did not know what was in it. He also requested a crisis team member. Plaintiff was then taken back to the health care unit and seen by a crisis team member, Michelle Dulle. (*Id.* at p. 27). Plaintiff explained the violation of involuntary administration of medication. Dulle then spoke with Nurse Buggett and directed for Plaintiff to be taken to the suicide room. (*Id.* at p. 28). On suicide watch, Plaintiff was given only a mattress on the floor and a "turtle vest." He had to eat with his fingers and was not able to shower. (*Id.* at p. 30). Plaintiff was in the suicide room for five days, where he continued to refuse the medication brought to him in powered form, he experienced seizures, and he went on a hunger strike. He eventually learned that the medication

being brought to him was a mixture of his seizure medication and a psych medicine called Abilify. (*Id.* at p. 29). Plaintiff states he was wrongfully placed on suicide watch when he was not suicidal or homicidal. Plaintiff told Bednarz, a psychiatrist at Centralia, several times that he did not want to take psych medication. He asserts that Abilify is not "an enforced medication." (*Id.* at p. 30).

On August 12, 2020, Plaintiff was released from suicide watch, taken back to segregation, and then housed again in East One. (*Id.* at p. 37). Plaintiff refused housing since he had been attacked by inmates in East One. He also requested protective custody several times, and his requests were denied by Lieutenant Robinson. (*Id.* at p. 38). At one point Robinson asked Plaintiff, "Why are you trying to get me in trouble…or get Springfield involved." Plaintiff also requested protective custody and a keep separate order from Counselors Delgotta and Myers. He remained housed in East One, despite informing Defendants that he was in danger from the 4 corner hustlers gang.

Around October 3, 2020, Plaintiff was assaulted again by another inmate while in the dayroom. (Doc. 1, p. 39). A few days prior to the assault, Correctional Officer Seiffert had heard the inmate threaten Plaintiff. Following the altercation, Plaintiff again was taken to segregation. After continuing to refuse housing in East One, Plaintiff was eventually placed in another unit. (*Id.* at p. 41).

Plaintiff asserts that if he had not been wrongfully found guilty by the Adjustment Committee on July 14, 2020, in violation of his due process rights, then he would not have been placed in East One and none of the subsequent events would have occurred. (Doc. 1, p. 43). He also contends that he never received proper medical treatment at Centralia for the injuries sustained when he was attacked on August 5. Plaintiff states that Dr. Pelegrin and Dr. Shah did not request additional x-rays, and he continued to experience nose bleeds two years following the incident. At some point, Plaintiff was transferred to Dixon Correctional Center and was scheduled for surgery

to repair the damage to his nose. (*Id.* at p. 32).

## PRELIMINARY DISMISSALS

The Court will dismiss all claims against Defendants Toennies and Tyus. These individuals are listed as defendants, but Plaintiff has not made any allegations against either of them in the body of the complaint. Accordingly, Toennies and Tyus will be dismissed from this action without prejudice. *See* FED. R. CIV. P. 8; *Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

The Court also dismisses any claims against Correctional Officer Billington. Plaintiff's only allegation against Billington is that after he was attacked on August 5, 2020, Billington attempted to persuade Plaintiff not to "press charges" against the attackers. (Doc. 1, p. 26). Billington told Plaintiff, "We don't need to get people involved that don't need to be involved." This conversation does not violate any constitutional rights or demonstrate involvement in the deprivations alleged.

Plaintiff will also not be allowed to proceed with his claims against the John Doe Defendants. Plaintiff claims that two groups of John Doe Defendants failed to protect him on August 5, 2020 – those working in the security shack outside the dining room and those working in the dining room. While a plaintiff may use the "John Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that groups of correctional officers violated his constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). Plaintiff must make plausible allegations against individuals. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). By stating that a group of correctional officers harmed him without providing more, all Plaintiff has done is establish that there is a "sheer possibility" that someone in that group harmed him. Because the Complaint neither describes the unknown defendants nor their individual conduct, the John Does are dismissed without prejudice.

Finally, to the extent Plaintiff intended to bring a claim of retaliation in violation of the First Amendment, such claim is dismissed, as it is not asserted against any Defendant listed in the case caption. (*See* Doc. 1, p. 13, 46).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** Fourteenth Amendment claim against Wegman and Westbrook for denying Plaintiff due process during the disciplinary hearing held on July 14, 2020.

**Count 2:** Eighth Amendment claim against Barton and Bailey for failing to protect Plaintiff from attack by other inmates on August 5, 2020.

**Count 3:** Eighth Amendment claim against Sparks, Shah, and Pelegrin for deliberate indifference to Plaintiff's injuries caused by the attack on August 5, 2020.

**Count 4:** Fourteenth Amendment claim against Dulle, Schulte, Bednarz, Copeland, and Buggett for placing Plaintiff on suicide watch without due process.

**Count 5:** Fourteenth Amendment claim against Bednarz and Copeland for attempting to force Plaintiff to take psychotropic medication while on suicide watch.

**Count 6:** Eighth Amendment claim against Robinson, Delgotta, Meyers, Seiffert, and Thompson for failing to protect Plaintiff from attack by an inmate on October 3, 2020.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any other claim that is mentioned in the

Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.

### Count 1

Because Plaintiff was found guilty by the Adjustment Committee members, Wegman and Westbrook, Plaintiff was demoted to C-grade status for two months. This disciplinary sentence does not amount to a liberty interest that requires the protections of due process, as there is no liberty interest in grade status. *See Hoskins v. Lenear,* 395 F.3d 372, 375 (7th Cir. 2005).

To the extent Plaintiff alleges due process was required prior to him being housed in East One, a disciplinary housing unit, such claim is also dismissed. Other than stating that East One houses more dangerous inmates, there is nothing in the Complaint to suggest that the conditions of East One imposed a significant hardship and that Plaintiff was "deprived of the basic human needs to which he is entitled." *Zimmerman v. Tribble,* 226 F. 3d 568, 572 (7th Cir. 2000). Furthermore, Plaintiff was in East One around 80 days, which is not an extreme period of time for discipline. *See Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (noting six months of segregation without more does not trigger due process rights). Because Plaintiff did not suffer a loss of liberty, he cannot establish a due process violation. Count 1 is dismissed.

### Count 2

At this point Plaintiff has sufficiently pled a claim against Barton and Bailey for failing to protect him from attack by other inmates on August 5, 2020. *See Farmer v. Brennan*, 511 U.S. 825, 831-833 (1994). Count 2 shall proceed.

### Count 3

Deliberate indifference to the "serious medical needs of a prisoner constitutes the

---

[1] *See Twombly,* 550 U.S. at 570.

unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).

As pled, Plaintiff has failed to state a claim of deliberate indifference against Nurse Sparks. Plaintiff states that following the attack, he was taken to see Nurse Sparks. He asserts that Sparks acted with deliberate indifference by not providing a bandage for his lip and a tetanus shot. She also did not refer him to an outside medical facility where he could receive stitches for the lip laceration since she was unable to perform the procedure herself. (Doc. 1, p. 23). However, Sparks provided Plaintiff ibuprofen for his pain, and he was seen by a medical doctor later that evening around 6 p.m., who also did not treat Plaintiff's lip laceration with stitches or give him a tetanus shot. (Doc. 1-2, p. 58-59). *See Burton v. Downey*, 805 F.3d 776, 787 (7th Cir. 2015) (to infer deliberate indifference on the basis of a healthcare provider's treatment decision, the decision must be "such a substantial departure from accepted professional judgment"). The following morning, Plaintiff received an x-ray of his nose. (*Id.* at p. 61). While Plaintiff disagrees with the treatment decisions made by Sparks, the Court finds that her conduct, as alleged, does not rise to the level of criminal recklessness required for deliberate indifference.

Count 3 is also dismissed as to Dr. Shah and Dr. Pelegrin. Plaintiff asserts that Pelegrin and Shah should have requested additional x-rays of his face since he continued to experience frequent nose bleeds. (Doc. 1, p. 32; Doc. 1-2, p. 63). It cannot be inferred from this allegation that

Defendants acted with deliberate indifference. It is not even clear if and when Shah and Pelegrin treated Plaintiff for his injuries and whether they knew he continued to suffer from nose bleeds. Accordingly, Count 3 is dismissed without prejudice.

### Count 4

Plaintiff asserts that he was placed on suicide watch in violation of his due process rights. The paperwork was not filled out correctly, and despite the fact that it is documented in his medical record that he was not a harm to himself or others, he remained on suicide watch. (Doc. 1, p. 33-34). Numerous district courts, however, "have explained that temporary placement on suicide watch, when not necessary, does not implicate a liberty interest protected by the Due Process Clause, nor does it amount to cruel and unusual punishment under the Eighth Amendment." *Gilliland v. Edleman,* No. 22-1083, 2022 WL 1522082, at *1 (C.D. Ill. May 13, 2022) (quoting *Mineau v. Atalie*, No. 21-C-230, 2021 WL 1873562, at *3 (E.D. Wis. May 10, 2021)); *see also Bradley v. Jones*, No. 20-cv-00139-RJD, 2020 WL 3412948, at *5 (S.D. Ill. June 22, 2020) ("there is no constitutional right to avoid placement on suicide watch."); *Span v. Melvin*, No. 18-1078, 2018 WL 2944152, at *2 (C.D. Ill. June 12, 2018); *Starks v. Couch,* No. 08-cv-407-GPM, 2009 WL 331357, at *2 (S.D. Ill. Feb. 11, 2009). Accordingly, Count 4 is dismissed with prejudice.

### Count 5

The Seventh Circuit has observed that "forcing a person to ingest psychotropic drugs, under some circumstances, may violate that person's constitutional rights under the due process clause of the fourteenth amendment" …courts have "recogniz[ed] a liberty interest to refuse treatment with psychotropic drugs." *Chambers v. Ingram,* 858 F.2d 351, 359 (7th Cir. 1988) (collecting cases). Here, Plaintiff was not in fact forced to take Abilify, and the medication was not administered to him against his will. He states that Defendants "attempted" to try and force him to take the medication by telling him he would not be released from suicide watch until he took the

medication. (Doc. 1, p. 36). Trying to persuade Plaintiff to take recommended medication is not a constitutional violation, and as Plaintiff was not forced against his will to take any medication, Count 5 is dismissed.

### Count 6

Count 6 will proceed against Robinson, Delgotta, Meyers, Seiffert, and Thompson. Plaintiff asserts that he requested protective custody from Robinson, Delgotta, Meyers, and Thompson, who were aware that Plaintiff had previously been assaulted based on gang activity and allowed him to remain in East One, where he had received threats by several inmates also involved in or related to the same gang. (Doc. -1, p. 37-38). *See Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011).

Count 6 will also proceed against Seiffert, who allowed the inmate who attacked Plaintiff on October 3, 2020, out of his cell at the same time as Plaintiff, despite hearing threats and an argument between Plaintiff and the inmate prior to October 3. (Doc. 1, p. 38).

### PRELIMINARY INJUNCTIVE RELIEF

In the Complaint, Plaintiff asserts that even though he is no longer at Centralia, he is still in danger from members of the 4 Corner Hustlers at Dixon Correctional Center. (Doc. 1, p. 47). He seeks injunctive relief "ASAP" in the form of ordering him transferred to protective custody. After filing this case, Plaintiff notified the Court that he had been transferred to Joliet Treatment Center. The Court construed the request in the Complaint as a motion for preliminary injunction. (*See* Doc. 21). As Plaintiff had been transferred, the Court found that his request for emergency injunctive relief was moot and denied the motion.

Now, Plaintiff has filed four more motions requesting the status of the case and a preliminary injunction. (Doc. 25-28). He states that even though he has been transferred, he is still in danger from members of the 4 Corner Hustlers at Joliet Treatment Center. (Doc. 26, 27). He

again requests to be placed in protective custody.

Plaintiff's requests for a preliminary injunction are **DENIED.** As the Court previously observed, Plaintiff's Complaint alleges mistreatment by staff at Centralia, and he has since been transferred to Joliet Treatment Center rendering his request for injunctive relief in this matter moot. *Lehn v. Holms,* 364 F. 3d 862, 871 (7th Cir. 2004) ("when a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief ... become[s] moot"). *See also Santiago v. Walls,* 196 F. App'x 416, 417(7th Cir. 2006). Additionally, it does not appear that the Defendants in this case are in anyway involved with Plaintiff's current conditions of confinement, and injunction orders bind only "the parties to the action, their officers or agents, servants, employees, and attorneys, and…those persons in active concert or participation with them." FED. R. CIV. P. 65(d). *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."). A motion for a preliminary injunction is not a proper avenue to add claims and individuals to this lawsuit. Finally, the motions include only vague, generalized descriptions of danger. Plaintiff provides no evidence or factual details supporting the fears of his safety at his current institution. *See Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008) ("[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy...."). Accordingly, the Court will not order a preliminary injunction.

In light of this Order, the Court also **DENIES as moot** Plaintiff's requests for status.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 2** shall proceed against Barton and Bailey. **COUNT 6** shall proceed

against Robinson, Delgotta, Meyers, Seiffert, and Thompson. **COUNTS 1, 3, 4,** and **5** are **DISMISSED**. Because there are no surviving claims against Defendants Wegman, Westbrook, Billington, Pelegrin, Toennies, Tyus, Sparks, Shah, Buggett, John Does, Dulle, Schulte, Bednarz, and Copeland, they are **DISMISSED without prejudice**. The Clerk shall **TERMINATE** them as parties to this case.

The motions for status and requests for a preliminary injunction are **DENIED.** (Doc. 25-28).

The Clerk of Court shall prepare for Barton, Bailey, Robinson, Delgotta, Meyers, Seiffert, and Thompson the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   May 30, 2023**

  *s/Stephen P. McGlynn*
  **STEPHEN P. MCGLYNN**
  **United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.