UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NIRIN WALLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.  3:22-cv-01099-GCS |
| ) | |
| CHRISTOPHER THOMPSON, ) | |
| ROBERT BARTON, ) | |
| CHRISTOPHER BAILEY, ) | |
| JASON ROBINSON, ) | |
| JOSH SEIFFERT, ) | |
| TRAVIS MEYER, ) | |
| and ) | |
| DAWN DELAGDO, ) | |
| ) | |
| ) | |
| Defendants.[1] ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

**INTRODUCTION AND BACKGROUND**

Pending before the Court is a motion for summary judgment filed by Defendants. (Doc. 193, 202). Specifically, Defendants argue the record does not contain sufficient evidence for Plaintiff to establish any element of his failure to protect claims against them.[2] Plaintiff opposes the motion. (Doc. 197, 212). Based on the reasons set forth below,

---

[1]    The Court **DIRECTS** the Clerk of the Court to change Defendant Thompson's name on the docket to Christopher Scott Thompson.

[2]    On August 22, 2025, the Court provided Plaintiff with the required Federal Rule of Civil Procedure 56 notice for pro se plaintiffs regarding summary judgment. (Doc. 196).

the Court **DENIES** in Part and **GRANTS** in Part the motion.

Plaintiff Nirin Walls is a prisoner currently incarcerated at Lawrence Correctional Center ("Lawrence") in the Illinois Department of Corrections ("IDOC"). He filed this lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was confined at Centralia Correctional Center ("Centralia"). (Doc. 1). The claims in his complaint include, *inter alia*, violations of the Eighth Amendment by correctional officers and correctional counselors, who failed to protect him on two separate occasions from assaults by fellow inmates in 2020. He seeks monetary damages.

On May 30, 2023, the Court conducted a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Plaintiff was allowed to proceed on the following claims:

> **Count 2:** Eighth Amendment claim against Defendants Barton and Bailey for failing to protect Plaintiff from attack by inmates on August 5, 2020.
>
> **Count 6:** Eighth Amendment claims against Defendants Robinson, Delgado, Meyer, Seiffert, and Thompson for failing to protect Plaintiff from attack by an inmate on October 3, 2020.

(Doc. 29).

Plaintiff alleges following a disciplinary hearing on July 14, 2020, he was housed in a disciplinary housing unit, East One. (Doc. 1, p.14). The East One housing unit contains highly aggressive and extremely dangerous inmates. While in East One, Defendant Barton would call Plaintiff a snitch, putting Plaintiff in danger from other inmates. On August 5, 2020, prior to lunch, two inmates named Green and Chew, members of a gang called the "4 Corner Hustlers," approached Plaintiff and asked him if

he was working with internal affairs. *Id.* at p. 17. The inmates began to argue. Defendant Bailey spoke through the intercom and stated, "[b]reak it up outside[,] if you going to chow fight out there." *Id.* at p. 18. The argument continued through lunch. At one point, it appeared Green was going to attack Plaintiff, and correctional officers and lieutenants, including Defendant Barton, broke up the fight. *Id.* at p. 19. The inmates then returned to the line to walk back to East One and staff "walked off." *Id.* After entering East One and as Plaintiff was entering his cell, he was held by his shirt and repeatedly punched. *Id.* at p. 20-21. Plaintiff could see Defendant Bailey watching from inside the control room. Covered in blood, Plaintiff was able to run to the control center, where he had to wait another five to seven minutes before Defendant Bailey entered the unit. *Id.* at p. 22. Plaintiff was then taken to health care.

On August 12, 2020, Plaintiff was released from suicide watch, taken back to segregation, and housed again in East One. (Doc. 1, p. 37). Plaintiff refused housing because he had been attacked by inmates in East One. He also requested protective custody several times, and his requests were denied by Defendant Robinson. *Id.* at p. 38. At one point Defendant Robinson asked Plaintiff, "[w]hy are you trying to get me in trouble . . . or get Springfield involved." Plaintiff also requested protective custody and a keep separate order from Defendants Delgotta and Meyer, who are counselors. He remained housed in East One, despite informing Defendants that he was in danger from the 4 Corner Hustlers gang.

Around October 3, 2020, Plaintiff was assaulted again by another inmate while in the dayroom. (Doc. 1, p. 39). A few days prior to the assault, Defendant Seiffert had heard the inmate threaten Plaintiff. Following the altercation, Plaintiff again was taken to segregation. After continuing to refuse housing in East One, Plaintiff was eventually placed in another unit. *Id.* at p. 41.

Plaintiff asserts if he had not been wrongfully found guilty by the Adjustment Committee on July 14, 2020, in violation of his due process rights, then he would not have been placed in East One and none of the subsequent events would have occurred. (Doc. 1, p. 43).

### FACTS

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Khungar v. Access Community Health Network*, 985 F.3d 565, 572–573 (7th Cir. 2021).

Plaintiff is an inmate within the IDOC housed at Lawrence. The allegations in Plaintiff's complaint took place while he was incarcerated at Centralia.

On August 5, 2020, Plaintiff was housed in the "East One" housing unit. That day, Plaintiff was involved in a physical altercation in the East One wing with two inmates, Tamar Green and Diamond Chew. The incident occurred right after the inmates returned from the cafeteria. Additionally, Plaintiff contends before heading to the cafeteria,

"Defendant Bailey stated on intercom, 'break it up, fight outside' ! Defendant Barton just laughed as we walked to the Dining room." (Doc. 197, p. 1).

In the cafeteria, just prior to the altercation, Plaintiff had been engaged in an ongoing verbal argument with inmate Green, and inmate Chew was present during the argument.

On August 5, 2020, Defendant Barton was a correctional officer on the East One wing, he brought the inmates to cafeteria from East One and he was present in the cafeteria during the verbal argument between Plaintiff and Green.

Plaintiff testified, at some point during the verbal argument, he believed a fight was inevitable, so he intended to initiate the fight in the cafeteria. Plaintiff contends he "wanted the fight to occur in the dinning [sic] room in open area where theres [sic] a gun tower because plaintiff was afraid to be brutally attacked by more than one inmate, causing possiable [sic] Death!" (Doc. 197, p. 2). Plaintiff further testified he was willing to participate in a one-on-one fight with inmate Green to resolve the issues between them, but he was not willing to participate in a fight outnumbered against multiple individuals, because his injuries would be more severe. Plaintiff maintains he "would reather [sic] fault [sic] one inmate instead of two to prevent severe injuries plaintiff received, also a c/o would be available to Act, protect, interven [sic] fast preventing bloody nose, broken nose, lacerations 'several' to lip, lost of hearing etc." *Id.* Additionally, Plaintiff testified he indicated he wanted to fight in the cafeteria by getting into a fighting stance, but

Defendant Barton and other correctional officers got between the inmates to stop the fighting from occurring. Plaintiff maintains he got into the fighting stance to alert staff to "[a]ct, protect and interven [sic]." *Id*. at p. 3.

When returning to East One wing, Plaintiff anticipated inmates Green and Chew would try to jump him while he was outside his cell. Plaintiff claims he "ran to his cell to hide/lock myself in my secured room, everyone knew whats [sic] was going to occur." (Doc. 197, p. 3). As Plaintiff was attempting to enter his cell, inmates Green and Chew physically attacked him from behind. Inmate Green punched him between five and six times, and inmate Chew punched him two times. Plaintiff tried to fight back by swinging a couple of times, but he did not strike either inmate.

Following the attack, inmates Green and Chew returned to their cells. Plaintiff ran to the control room at East One where Defendant Bailey was located. Plaintiff told Defendant Bailey he needed emergency health care, and he was bloody.

Defendant Bailey observed Plaintiff had blood on his face and shirt, and Defendant Bailey called a correctional lieutenant and correctional sergeant to East One.  Plaintiff alleges Defendant Bailey waited until Defendant Barton came into East One wing to call a code.

Plaintiff went to healthcare for his injuries.

Centralia's Internal Affairs unit immediately investigated the incident, which included interviewing the three inmates involved, as well as three other inmates on the

wing who witnessed the altercation and provided statements as confidential informants. The confidential informants' statements operated to inform Internal Affairs of the incident.

One confidential inmate stated all the other inmates knew that Plaintiff and inmate Green were going to fight.

Plaintiff received seven days in segregation for the incident but spent more days in segregation for refusing to go back to East One wing.

Defendant Barton was not in East One wing at the time of the altercation.

On October 3, 2020, at approximately 10:15 a.m., Plaintiff and another inmate Keith Gunby, were involved in a physical altercation in the dayroom at Centralia. As a result of the altercation with inmate Gunby, Plaintiff sustained an injured pinky finger and a small scrape on his forehead. According to the Adjustment Committee's Final Summary Reports, Defendant Sieffert observed both inmates throwing closed fists punches at each other. Defendant Sieffert ordered them to stop and they did. Plaintiff contends he did not throw a closed fist at inmate Gunby and that another sergeant pulled inmate Gunby off him.

Plaintiff was disciplined for the altercation.

Plaintiff testified that inmate Gunby wanted to fight Plaintiff on October 3, 2020, because inmate Gunby held a grudge against Plaintiff from a prior incident where both inmates were playing a card game in the prison yard. During that incident, Plaintiff

slapped inmate Gunby in the face, but it did not lead to a fight. Plaintiff also alleges

inmate Gunby was friends with inmates Green and Chew and was also a 4 Corner Hustler

gang member.

From August 18, 2020, to September 28, 2020, Plaintiff submitted five grievances

requesting protective custody: #E-20-8-67 dated August 18, 2020; #E-20-102 dated

August 24, 2020; #E-20-10-40 dated September 20, 2020; #E-10-41 dated September 21,

2020; and #E-20-7 dated September 28, 2020.

Grievance records show that with respect to two of Plaintiff's grievances

requesting protective custody (E-20-8-67 and #E-20-10-40), Defendant Robinson

responded to them on behalf of Internal Affairs.[3] Defendant Thompson received a

request by Plaintiff seeking protective custody, but he referred the request to Internal

Affairs for their determination as to whether protective custody was warranted. Plaintiff

alleges Defendant Thompson received several requests for protective custody from him

and letters from his mom.

As to his claims against Defendants Delgado, Meyer, and Robinson, Plaintiff

testified as follows in his deposition:

> A. No. They are based on the statement that they had put keep separates on
> all of us to prevent further issues from occurring, and they never did. That's
> why I was going back and back to East One and the October 3rd issue occurred.
> Q. So the three of them misstated the policy that was in place?
> A. Yes, that would have prevented the second fight by going back to East One

---

[3]    In response to the grievances, Defendant Robinson stated Plaintiff's claims could
not be substantiated, and Centralia did not have protective custody.

right where the first one start, because Chew came to my door, and I think that it was 8 – between 8/5 or 8/12 its stated that you cannot go back to East One because we are putting – anyone who fights, they automatically get a keep separate put on them and they are to be separated, so you are not going back to East One, which I went back to East One and the second fight occurred.

. . .

A. Like she stated to me, these are her exact words, in CHAMPS, which CHAMPS is, I believe the IDOC computer system, whatever, is put in there to keep separate on these two individuals and you, so you won't be going back to East One, the two individuals, Green and Chew, before the second issue occurred, but I still went back there anyway. You see what I am saying? That's when the second issue occurred, where I wasn't even around them, and I need to reiterate, and inmate Gumby for us to get into it. You see what I am saying? So if I wasn't even around them or in the same housing unit, this wouldn't have occurred, right?

(Doc. 193-1, p. 47, 48).

On October 12, 2020, Plaintiff submitted grievance #20-11-68, in which Plaintiff grieved Defendants Meyers and Delgado did not respond to his requests for Keep Separate From ("KSF") designations. Plaintiff contends this grievance "was one of 'several' missing grievances and missing request slips, addressed to Delgado and Meyers, and Thompson." (Doc. 197, p. 8).

As part of the prison's response to grievance #20-11-68, Grievance Counselor Rollins noted on November 10, 2020, inmates Gunby, Green, and Chew were declared as Keep Separate From ("KSF") individuals in the system, none of the three inmates resided in the same house as Plaintiff or used the same yard as him, that inmate Chew was no longer in IDOC custody.

In his appeal of the denial of grievance #20-11-68 to the Administrative Review

Board ("ARB"), Plaintiff included a letter dated December 18, 2020, wherein he stated he declared inmates Green and Chew as enemies around September 16, 2020, and if he had been moved out of East One wing then, he would not have been in a place where he could be attacked by inmate Gunby. As to this, Plaintiff contends he stated in many grievances that he is "running from 'All' 4 corner hustlers, vice lords and traveler vice lords." (Doc. 197, p. 8).

The prison's response to grievance #20-11-68 does not indicate that either Defendants Delgado or Meyers were personally involved in responding to the grievance. Plaintiff avers that at this time Defendant Delgado and Meyers were his counselors, and he wrote to them multiple times.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Fletcher v. Doig*, 145 F.4th 756, 764 (7th

Cir. 2025) (citing *Anderson*, 477 U.S. at 255). *See also Bishop v. Air Line Pilots Association Int'l,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Smith v. City of Janesville,* 40 F.4th 816, 821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there

must be evidence on which the jury could reasonably find for the [non-movant]").

Instead, the non-moving party must present "definite, competent evidence to rebut the

[summary judgment] motion." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir.

2019) (internal citation omitted).

## DISCUSSION

Prison officials have a duty to protect inmates from violent assaults by other

inmates. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "That does not mean, however,

that a constitutional violation occurs every time an inmate gets into a fight." *Hunter v.

Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). Officials incur liability for the breach of that duty

when they were "aware of a substantial risk of serious injury to [an inmate] but

nevertheless failed to take appropriate steps to protect him from a known

danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285

F.3d 601, 605 (7th Cir. 2002)), abrogated on other grounds by *Kemp v. Fulton County*, 27

F.4th 491, 494-495 (7th Cir. 2022); *see also Santiago v. Walls*, 599 F.3d 749, 758–759 (7th Cir.

2010). To succeed on a failure to protect claim, Plaintiff must show that (1) Defendants

were aware of a substantial risk of serious injury to him, and (2) they acted with deliberate

indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569

(7th Cir. 2008). An official will only be liable when he disregards that risk by failing to

take reasonable measures to abate it. *See Borello v. Allison*, 446 F.3d 742, 747 (7th Cir.

2006).

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). In such cases, "a prisoner normally proves actual knowledge of *impending* harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (emphasis added). A "complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). On the other hand, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown*, 398 F.3d at 913; *see also Klebanowski v. Sheahan*, 540 F.3d 633, 639-640 (7th Cir. 2008) (upholding summary judgment where a prisoner told officers about a past altercation with three other inmates and his desire to be transferred because he feared for his life, but did not tell them he had been threatened with future violence or that gang members perpetrated the past attack based on his non-gang affiliation); *Dale*, 548 F.3d at 569-570 (upholding summary judgment where a prisoner's vague statements to guards that other inmates were pressuring him and asking him questions "were simply inadequate to alert officers to the fact that there was a true threat at play"). *But see Sinn v. Lemmon*, 911 F.3d 412, 422 (7th Cir. 2018) (finding summary judgment inappropriate where a prisoner told an official he wanted to be moved to a

Page **13** of **20**

different dorm after being relocated because he feared a second attack by a gang, and because in addition to the vague complaint, the official also knew about the prison's prevalent gang violence, the prior attack by gang members on the prisoner, and that other victims from the first attack who had been relocated were also attacked a second time).

Furthermore, liability for supervisors is "not vicarious" in this context—there needs to be personal involvement or "a connection between the supervisor's action or inaction and the violation at issue," and "the supervisor must have also had the necessary state of mind," the high standard of deliberate indifference in this case. *Bostic v. Murray*, 160 F.4th 831, 841-842 (7th Cir. 2025).

A.    **Count 2 – Altercation on August 5, 2020**

Defendants Barton and Bailey argue they are entitled to summary judgment because the record contains insufficient evidence that they failed to protect Plaintiff from the attack by inmates on August 5, 2020. The Court disagrees with Defendants.

First, the Court finds that the fight on August 5, 2020, satisfies the objective prong. Plaintiff was attacked by inmates Green and Chew immediately after returning from the cafeteria. He was punched five to six times by inmate Green and twice by inmate Chew. Further, he sustained a split lip, a swollen eye, and a swollen nose. These injuries constitute objectively substantial risks of serious harm.

Next, viewing the evidence in the light most favorable to Plaintiff, the Court finds that the evidence supports a finding that both Defendants Barton and Bailey had

knowledge of a substantial risk to Plaintiff, and they failed to take reasonable steps to prevent that risk. As to Defendant Barton, the record contains evidence which a jury could infer that Defendant Barton had actual knowledge of escalating tension between the inmates and a specific risk of violence to Plaintiff. The record reveals Defendant Barton escorted the inmates to the cafeteria, Defendant Barton witnessed the confrontation in the cafeteria, Defendant Barton saw Plaintiff assume a defensive stance, and Defendant Barton intervened and separated the inmates. Further, Plaintiff testified he believed a fight was inevitable, and he heard inmates Green and Chew openly discussing plans to jump him on the walk back to East One wing. While Defendant Barton did not escort the inmates back to East One wing and he was not present when the assault occurred, a jury could reasonably infer that Defendant Barton understood the confrontation between the three inmates was not resolved, that tensions remained high, and that the situation had the potential to escalate further. Yet, Defendant Barton ignored these obvious risks. These are material issues of fact that must be resolved by a jury.

Likewise, as to Defendant Bailey, the record reveals Defendant Bailey was the officer on duty in the control room in the East One wing before the inmates went to the cafeteria and when the inmates returned from the cafeteria. The attack occurred outside the control room. Further, Plaintiff testified he was attempting to enter his cell when he was attacked from behind, he was struck multiple times, and Defendant Bailey did not call for help until Plaintiff ran to the control center after the assault. The Court finds that

a reasonable jury could infer Defendant Bailey was aware of the ongoing conflict with these inmates and was aware of the likelihood of a fight occurring. Moreover, whether Defendant Bailey responded properly and/or failed to act is a question for the jury to decide.

Lastly, Defendants argue that Plaintiff caused his own injuries in that he instigated/voluntarily participated in the assault and that he could have warned staff that he believed inmates Green and Chew would attack him when he returned to East One wing. The Court concludes a reasonable jury could determine Plaintiff did not voluntary participate in the altercation that caused his injuries as the actual assault occurred outside his cell, not in the cafeteria, and he was struck from behind while trying to get into his cell for safety. Additionally, a reasonable jury could determine Plaintiff did not put himself in harm's way by failing to request protection, as Defendants clearly were aware of the previous encounters with the inmates, and thus, Defendnats' failure to act was the proximate cause of Plaintiff's injuries. Thus, Defendants are not entitled to summary judgment on Count 2.

**B.    Count 6 – Altercation on October 3, 2020**

Next, Defendants Robinson, Thompson, Delgado, Meyers, and Seiffert argued that no reasonable jury could find they were aware of any risk posed by inmate Gunby, and the altercation on October 3, 2020, was brief, unforeseeable, and promptly addressed. Plaintiff counters Defendants were aware of ongoing threats and staff failed to keep him

separate from known enemies.[4]

First, the Court, for the purposes of addressing this Count, finds that the incident on October 3, 2020, satisfies the objective prong.

Next, the Court will address summary judgment as to Defendant Seiffert. Defendant Seiffert argues there is no evidence he had knowledge of prior interactions between Plaintiff and inmate Gunby or threats by inmate Gunby against Plaintiff. Defendant Seiffert maintains the record is clear that he first became aware of an issue between the two inmates during the altercation in the dayroom on October 3, 2020. Defendant Seiffert maintains he saw both fighting and took immediate action to intervene by calling for back up and instructing the inmates to cease fighting, which they did.

Plaintiff counters Defendant Seiffert previously heard inmate Gunby threaten him days before the incident. Plaintiff contends on October 3, 2020, he never threw a closed fist at inmate Gunby, and he was assaulted by inmate Gunby. Plaintiff also contends Defendant Seiffert wrongfully let inmate Gunby out of his cell into the dayroom and then left the dayroom to take a line to the yard. Further, Plaintiff asserts it was another sergeant that pulled inmate Gunby off him during the altercation.

---

[4]     Plaintiff also argues Defendants failed to follow Covid protocols and institutional protocols. Even if true, Defendants' failures to follow prison procedures are not constitutional violations in and of themselves. *See Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 532 n.3 (7th Cir. 2000). *See also Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (stating that "[Section] 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations[.]").

Interpreting the facts in favor of Plaintiff, a reasonable jury could conclude Defendant Seiffert exhibited deliberate indifference by letting inmate Gunby out of his cell into the dayroom where Plaintiff was located and by taking a line to the yard after overhearing inmate Gunby's threats against Plaintiff. Plaintiff has sufficiently demonstrated genuine disputes of material fact surrounding Defendant Seiffert's conduct to defeat summary judgment. Based on the foregoing, the Court denies the motion for summary judgment as to Defendant Seiffert. If his story is true, Plaintiff was not a victim of the inherent, dangerousness of prison life, but suffered injuries because Defendant Seiffert turned his back on Plaintiff as he faced an imminent and serious threat of harm from inmate Gunby. *See, e.g.*, *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002) (stating that "'[i]f his story is true . . . ' -- [P]laintiff is entitled to a trial, but of course the trier of fact may disbelieve his evidence, all or most of which comes from inmates, who tend not to be highly credible witnesses.").

Next, the Court turns to address summary judgment as to the remaining Defendants. Defendants argue the record contains no evidence to suggest any of them were made aware of a specific, impending, and substantial threat that Plaintiff would be harmed by inmate Gunby in the dayroom on October 3, 2020. Viewing the evidence in the light most favorable to Plaintiff, the Court agrees with Defendants.

Prior to October 3, 2020, Plaintiff filed five grievances requesting protective custody but none of these grievances mentioned inmate Gunby or identified him as a

threat. Defendant Robinson responded to two of the grievances on behalf of Internal

Affair, and Internal Affairs found no substantial threat to Plaintiff that would warrant

protective custody. Further, Plaintiff's request dated August 25, 2020, to Warden

Thompson for protective custody contained general safety concerns, but did not contain

a threat from inmate Gunby. Defendant Thompson forwarded this request to Internal

Affairs, consistent with the responsibilities of a warden. While Plaintiff's mother did send

Warden Thompson a letter dated September 21, 2020, this letter did not mention Gunby.

*After* the altercation on October 3, 2020, with Gunby, Plaintiff filed grievance #20-1168 on

October 12, 2020, concerning KSF designations. These circumstances were insufficient to

put Defendants Delgado and Meyers on notice that Plaintiff faced an ongoing threat of

harm from inmate Gunby. *C.f. Klebanowski*, 540 F.3d at 639-640; *Dale*, 548 F.3d at 569-570.

The record is clear Defendants Robinson, Thompson, Delgado, and Meyers had no

knowledge of a specific threat from inmate Gunby, and they did not have any

involvement in the events leading up to the altercation. The altercation on October 3,

2020, involved another inmate and arose out of different circumstances than the

altercation on August 5, 2020. Thus, the Court finds that summary judgment is proper as

to the Defendants on Count 6.

## CONCLUSION

Accordingly, the Court **DENIES in part and GRANTS in part** the motion for

summary judgment. (Doc. 193). The motion is denied as to the claims against Defendants

Bailey and Barton in Count 2 and as to the claim against Defendant Seiffert in Count 6. The motion is granted as to the claims against Defendants Robinson, Thompson, Delgado, and Meyers in Count 6. The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of Defendants Jason Robinson, Christopher Thompson, Dawn Delgado, and Travis Meyers, and against Plaintiff Nirin Walls on Count 6 at the close of the case. Remaining for trial are the claims against Defendants Bailey and Barton in Count 2, and the claim against Defendant Seiffert in Count 6.

Lastly, the Court **DIRECTS** the Clerk of the Court to set this matter for status conference to discuss the possibility of another settlement conference and/or to discuss potential trial dates.

**IT IS SO ORDERED.**

**DATED:  March 26, 2026.**

Digitally signed by Judge Sison
Date: 2026.03.26 11:12:21 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

Page **20** of **20**